**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00558-CMA-MEH

CORNELLA BROTHERS, INC., a Colorado corporation,

　　Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin corporation,

　　Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' Cross Motions for Summary Judgment.  (Doc. ## 24, 25.)  For the following reasons, the Court grants Defendant's Motion and denies Plaintiff's Motion.

### I. BACKGROUND

This case concerns a dispute over whether Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") has a duty to defend a lawsuit against its insured, Plaintiff Cornella Brothers, Inc. ("Cornella").  The underlying lawsuit that triggered the instant litigation was filed in state court by the Cherokee Metropolitan District ("Cherokee").

As alleged in the Cherokee complaint, Cherokee hired Velocity Constructors ("Velocity") in February 2007 to act as the general contractor for the construction of the Upper Black Squirrel Creek Recharge Facility ("the recharge facility").  (Doc. # 26-3;

Compl., ¶ 2.)[1]  Velocity in turn subcontracted with Cornella in March 2007 to perform excavation work for the recharge facility.  (Doc. # 26-5.)  The Cherokee complaint also makes reference to a wastewater treatment facility that was built at the same time as the recharge facility.  (Compl., ¶ 2.)  The same engineering company provided the designs for both the wastewater and recharge facilities, but Velocity is alleged to have handled construction only at the recharge facility.  (*Id.*, ¶ 3.)

The recharge facility "has 11 recharge basins which are intended to provide an avenue of percolation for treated effluent into the alluvial aquifer.  [This f]acility was intended to recharge 4.8 [million gallons per day] of treated effluent." (*Id.*, ¶ 2.)  Both the wastewater and recharge facilities were completed in March 2008 (*Id.*, ¶ 7), but the recharge facility is only performing at an average of 28% of the intended percolation rate, with some basins achieving as little as 7% of the intended rate.  (*Id.*, ¶ 8.)  In other words, although the recharge facility was supposed to process 4.8 million gallons of effluent per day, it is processing only one-fourth of that amount.

The Cherokee complaint attributes the suboptimal percolation rate to two causes. First, the complaint alleges that the engineering company introduced "design defects" at both the wastewater and recharge facilities.  Second, the complaint alleges Velocity (and presumably its subcontractors) introduced "construction defects" at the recharge facility.  In particular, the complaint states that the construction defects include a failure

---

[1] Following the convention of the parties, this Court will refer to the underlying Cherokee complaint by referencing the relevant paragraph numbers.  The Cherokee lawsuit was filed in state court in El Paso County and is captioned *Cherokee Metropolitan District v. Velocity Constructors, Inc., et al.*, No. 2012-cv-1066.

to: (1) properly excavate the facility, (2) fill the recharge basins with appropriate materials, (3) compact the fill material, and (4) install a functional electrical system. (*Id.*, ¶¶ 12-13)

These defects have caused a number of alleged damages, principally economic losses tied to the need to redesign the two facilities and consequential damages triggered by the facility's suboptimal performance, which will lead Cherokee to breach contracts and violate state environmental laws. Other alleged damages relevant to determining Liberty Mutual's duty to defend are discussed in greater detail below.

The subcontract between Velocity and Cornella required Cornella to carry a Commercial General Liability Insurance Policy. (Doc. # 26-5, at 10-11.) Cornella purchased this insurance from Liberty Mutual, which issued two policies to Cornella that were effective from June 1, 2006 to June 1, 2008. (Doc. # 26-1 [hereinafter "Policy"].)[2]

After Cherokee filed its complaint against Velocity, Velocity filed a third-party complaint against Cornella. (Doc. # 26-4.)[3] Cornella provided notice to Liberty Mutual of this underlying litigation and demanded that Liberty Mutual defend Cornella. Liberty

---

[2]  Liberty Mutual actually issued two separate policies to Cornella: one which ran from June 1, 2006, to June 1, 2007, and one from June 1, 2007, to June 1, 2008. In numerous filings before this Court, the parties have submitted copies of these two almost identically worded policies. For ease of reading throughout the opinion, this Court will reference the policy language from the 2006-2007 policy included with Liberty Mutual's Motion (Doc. # 26-2), rather than providing cross-references to multiple filings in the record. It will use the shorthand "Policy" to refer to the insurance contract at issue here.

[3]  Cornella is referred to as "Cornella Brothers Excavating, Inc." in the Third Party Complaint filed by Velocity but as "Cornella Brothers, Inc." in all other relevant filings. (*Compare, e.g.*, Doc. # 26-3, at 3, *with* Doc. # 24). Neither party has noted this difference in any record before this Court, and the Court presumes that these two differently worded entities are in fact one in the same or that the difference is not material for purposes of resolving the summary judgment motions.

Mutual denied that, under the policies it provided Cornella, it was required to accord such coverage. (Doc. # 4 at 3.) The parties then initiated this litigation to resolve the dispute.[4]

## II. ANALYSIS

### A. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The question here is whether either party meets that standard as to Liberty Mutual's duty to defend.

As both parties note, in *Greystone Construction, Inc. v. National Fire & Marine Insurance Co.*, 661 F.3d 1272 (10th Cir. 2011), the Tenth Circuit set forth the standard for Colorado duty-to-defend cases in which at least some of the damage in the underlying lawsuit arises from the allegedly defective design of a structure built by a contractor. Thus, for purposes of this case, *Greystone* informs the Court's analysis of he parties' arguments.[5]

In *Greystone*, the Tenth Circuit first reiterated the heavy burden under Colorado law that an insurer must meet in avoiding a duty to defend an insured. As *Greystone*

---

[4] Velocity was initially a defendant in this case but was dismissed by stipulation of both parties. (Doc. # 41.)

[5] This Court notes that the *Greystone* holding might soon be called into question, as the Colorado Supreme Court has granted a petition for certiorari to resolve matters that proved dispositive in that case. *See Colorado Pool Sys., Inc. v. Scottsdale Ins. Co.*, No. 12SC1000, 2013 WL 4714283 (Colo. Sept. 3, 2013). The certiorari grant, however, will almost certainly not help Cornella: even if the Colorado Supreme Court endorses the broadest possible rule for duty-to-defend cases, Cornella's two arguments in favor of coverage would still fail for the reasons stated below.

reasoned, "[a]n insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." *Id.* at 1284 (quoting *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613-14 (Colo. 1999)). Indeed, the court continued, "[w]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Id.* (quoting *Compass*, 984 P.2d at 613-14 (emphasis added)).

*Greystone* applied this standard to lawsuits brought against two general contractors by homeowners who had sued them for defective construction caused by the subcontractors who installed the homes' foundations. The homeowners' claims were premised on the theory that the houses were "damaged due to [the] subcontractor's negligent design and construction of the house's soil-drainage and structural elements, which caused dangerous exposure to shifting soils." *Id.* at 1276.

The general contractors had commercial liability insurance coverage from two insurance companies. One company assumed a duty to defend in the homeowners' suits, while the other denied that such a duty existed. The dispute between these parties turned on the language of the standard Commercial General Liability Insurance Policy (CGL), which is the same policy at issue in this case.

As relevant here, the *Greystone* court considered two important provisions in the CGL. First, the court considered the "your work" exclusion to coverage. In pertinent part, this exclusion states:

> *l.* "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Policy at 6. "Your work" is defined as: "(1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations." Policy at 16. The Tenth Circuit concluded that this exclusion did not apply to the general contractors because all relevant work was performed by subcontractors, thereby triggering the exception to this exclusion. *Greystone*, 661 F.3d at 1278.

Second, the *Greystone* court examined the definition of an "occurrence" triggering insurance coverage. As to this question, the CGL Policy states in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

6

Policy at 3. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 15. The question in *Greystone* was the extent to which this definition can contemplate damage caused by a defectively designed structure.

As to this question, the *Greystone* court reasoned that "the term 'occurrence,' . . . encompass[es] unforeseeable damage to nondefective property arising from faulty workmanship." *Id*. at 1282. The Court later added a corollary to this rule in the case of subcontractors, noting that the duty to defend can be triggered by damage to non-defective property that includes "both the nondefective work product of the contractor and third-party property." *Id*. at 1287.

The *Greystone* court then applied the rule it had articulated to the facts of the homeowners' lawsuits. The Court noted that "the movement of the basement floor and damage to the upper living areas [in the homes in question]" was allegedly caused by the "houses['] exposure to expansive soils, which was not otherwise prevented due to the subcontractor's poor design and construction of the house's soil-drainage and structural elements." *Id*. at 1286.

Because there was no allegation by the non-defending insurance company that this damage was intended or anticipated by the general contractors, the *Greystone* court concluded that the duty to defend was triggered under the policy. *Id*. In other words, it was clear that the allegations in the underlying complaints stated a claim that was "potentially or arguably within the policy coverage" because of the types of

7

unintended damages caused to the rest of the house by the defective workmanship on the foundation.

## B. APPLICATION

Cornella analogizes to *Greystone* and suggests that similar to the general contractors in that case it can point to unintended damages to nondefective property and thereby require Liberty Mutual to defend its interests in the Cherokee suit.

This Court cannot agree with Cornella's position. As an initial matter, Cornella's attempt at comparison misses an important contrast between *Greystone* and the instant case. Whereas the parties arguing for a duty to defend in *Greystone* were not alleged to have performed any defective work themselves,[6] in this case, the party invoking the duty to defend is also the one that allegedly performed defective work. Thus, while the aforementioned "your work" exclusion could not have applied in *Greystone*, this case presents a much closer call on the applicability of this exclusion. Indeed, the "your work" exclusion would probably apply to many of the damages claims in the Cherokee complaint, such as those which allege that Cherokee will need to replace the materials used in the recharge facilities' eleven basins.

Nonetheless, although *Greystone* is distinguishable from the instant case, even if the principal damages claims fall within the "your work" policy exclusion, it does not follow that Liberty Mutual has no duty to defend. Indeed, as noted above, *Greystone* reasoned that, if the allegations of the underlying complaint state any claim that

---

[6] As noted above, all the defective work in *Greystone* was performed by subcontractors, at the direction of the general contractors who were sued.

8

"is potentially or arguably within the policy coverage" or that otherwise raise some doubt as to whether a theory of recovery within the policy coverage has been pleaded, then the insurer has a duty to defend. 661 F.3d at 1284.

In this regard, Cornella suggests that two damages allegations in the Cherokee complaint trigger the duty to defend. The Court considers each in turn.

First, Cornella notes that, according to the Cherokee complaint, "the percolation of treated effluent from the [recharge facility] is the basis for a replacement plan filed with the Colorado Department of Water Resources for the purposes of securing additional groundwater appropriation rights within the Upper Black Squirrel Alluvial Aquifer." (Compl. at 18.) In other words, it appears that Cherokee sought to convince state regulators to allow it to draw more water from the aquifer connected to the recharge facility on the theory that Cherokee was helping to replenish water flowing into this source.

Nevertheless, according to the Cherokee complaint, the recharge facility's defects "will proximately cause the denial and/or diminishment of the application and replacement plan" and therefore the probable loss of access to these additional water rights. (*Id.*) Cornella argues that a water right is a property right and that this damages allegation therefore contains a reference to unforeseeable damage to nondefective property that triggers the duty to defend.

Second, Cornella points to Cherokee's claim for Negligent Non-Disclosure/ Concealment, in which Cherokee alleges that Velocity and the engineering company "knew or should have known" that they were failing to properly design the facilities and

9

were using "unacceptable fill materials" in the construction of the recharge facility.

(*Id*. at 34.) As related to this claim, the Cherokee Complaint states in pertinent part:

> As a direct and proximate result of Cherokee's reliance [on the representations of the engineers and Velocity that the facility was being constructed with appropriate materials], it has caused [*sic*][7] foreseeable damages, *including damages to the property of others*, as well as other consequential damages, in an amount to be proven at trial.

(Compl. at 39) (emphasis added). Throughout the summary judgment filings, Cornella emphasizes this use of the phrase "damages to the property of others" and suggests that this vague language alone triggers the duty to defend.[8]

Neither of these theories provides sufficient basis to trigger a duty to defend. As to the water-right theory, Cornella mischaracterizes what the Cherokee complaint alleges was lost: the complaint references a *loss of a chance* at greater access to a water right, not the loss of a water right itself. While the loss of an actual water right might trigger the duty to defend, Cornella does not explain how the mere loss of a chance triggers the same obligation, nor does it support such a position by reference to Colorado legal authority. This Court will not expand the scope of a duty to defend to encompass such a damages claim, especially without more developed argument from the party invoking the duty.

Second, contrary to Cornella's apparent position, this Court does not read the phrase in the Cherokee complaint—"damage to the property of others"—as possessing

---

[7] The Court presumes that the complaint meant to state that Cherokee "has *suffered* foreseeable damages . . . ."

[8] Cornella points to similarly vague language about "damage to property" that is used in the Third Party Complaint filed by Velocity against Cornella. (Doc. # 33 at 9.)

some sort of talismanic force that automatically triggers a duty to defend. To the contrary, it is well established under Colorado law that conclusory and vague allegations such as this one cannot by themselves trigger the duty to defend. *See, e.g.*, *Land v. Auto-Owners Ins. Co.*, 511 F. App'x 795, 800 (10th Cir. 2013); *TCD, Inc. v. Am. Family Mut. Ins. Co.*, 296 P.3d 255, 259 (Colo. Ct. App. 2012); *Gen. Sec. Indem. Co. of Arizona v. Mountain States Mut. Cas. Co.*, 205 P.3d 529, 537-38 (Colo. Ct. App. 2009), *superseded by statute on other grounds as stated in TCD, Inc.*

To be sure, it may be sufficient for an insured to rely on a vague allegation of "other property" damage if the insured also (1) plausibly identifies the property referenced in the allegation; and (2) explains why damages to this property would trigger a duty to defend. In other words, a vague allegation coupled with a plausible explanation of what the allegation references might be sufficient to trigger the duty to defend. *Cf. Gen. Sec. Indem. Co. of Arizona*, 205 P.3d at 537 (noting that the plaintiff's duty-to-defend argument failed in part because it relied on a vague allegation of "other losses" and "did not provide any specific instances of the additional or 'other property' damage" that would trigger the duty to defend).

In this case, however, Cornella has effectively chosen to hang its hat on the "damage to property of others" phrase alone, without advancing any plausible theory explaining what the phrase references or how damages to such property would trigger a duty to defend.[9] Absent more explanation from Cornella, this Court is unwilling to

---

[9] To be sure, Cornella suggests that the other property may reference the aforementioned lost water right, but for the reasons stated above, the Court cannot agree that the water right theory triggers a duty to defend.

11

conclude that the unexplained damages reference arguably or potentially falls within the policy coverage or otherwise raises some doubt as to whether a theory of recovery within the policy coverage has been pleaded.[10]

### III. CONCLUSION

In sum, Cornella has failed to present any viable theory as to why Liberty Mutual owes it a duty to defend. It is therefore ORDERED that Cornella's Motion for Summary (Doc. # 24) is DENIED and Liberty Mutual's Motion for Summary Judgment (Doc. # 25) is GRANTED. Accordingly, this case is DISMISSED WITH PREJUDICE, and the Clerk of the Court shall enter judgment in favor of Liberty Mutual and against Cornella. Pursuant to D.C.Colo.LCivR 54.1, Liberty Mutual may thereafter have its costs by filing a bill of costs and supporting documentation within 14 days of the date of that order.

DATED: January 29, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[10] Liberty Mutual advances a number of other arguments for why no duty to defend is triggered in this case. This Court declines to reach these other arguments as they are unnecessary to resolve the dispute between the parties.